May it please the Court. My name is Scott Zarin. I represent the Appellant Nevada Risk Management. There's only one question in this case, and that question is whether there, in fact, was a meeting of the minds between the defendant and the plaintiff regarding the settlement agreement that the two allegedly entered on May 17, 2002. This question turns upon one issue. That issue is whether when Nevada Risk Management faxed a copy of the draft settlement agreement that it received the previous day from American Safety to American Safety's attorney, whether that, in fact, resulted, was an offer or whether it was an acceptance of an offer that was received the previous day. Our position is that, in fact, it was an offer, and the fax of the previous day was an invitation to create an offer. The reason this is significant is because one hour after the fax was sent, there was a revocation. A revocation can only occur of an offer. There can be no revocation of an acceptance. The evidence indicates that the draft of the settlement agreement that was sent by Mr. McGuardy, who is Nevada Risk's attorney, to Mr. Goetz, who is American Safety's attorney, on the 17th of May, was unsigned, first of all, and second, it did not contain the terms that it should have memorialized in a written agreement based upon the settlement conference that took place on March 15, 2002. So in the absence of the memorialization of those terms in that agreement and the faxing of that agreement to American Safety's attorney, it doesn't seem that there could have been any acceptance because the offer had not occurred the previous day. But there was a lot of confusion, obviously. There was confusion, yes. But then the district court had a hearing and listened to all this and made some factual findings as to what happened. And unless those findings are clearly erroneous, why would we upset his conclusion that there was, in fact, a binding settlement? Well, the district court didn't make – made factual findings with respect to what actually occurred. It made a factual finding that on May 16th, there was a fax that went between the attorneys on both sides. It made a finding that there was another fax that went from one – from Mr. McGrady to Mr. Goetz on May 17th. It then made a legal conclusion that those underlying facts constituted an acceptance rather than an offer. Our contention here today is that that's not the case, that, in fact, they constituted an offer. And the previous day, the fax that occurred from Mr. Goetz to Mr. McGrady was merely an invitation to make an offer. The district court also dealt with what had happened in the intervening period before – that contemplated some things being resolved, and the May forwarding at a time when those things had been resolved. Did it not? The district court – Didn't the district court deal with that during the course of the hearing? During the settlement conference or during the – During the hearing. During the – there are two hearings here. There was a hearing that occurred on March 15th, 2002, which was a hearing conducted by Judge Johnson, which was a hearing that constituted a settlement conference. And then there was a subsequent hearing on the motion to enforce settlement in September of that same year. In the earlier hearing, there was no resolution of what those – the terms of the agreement would be. That's why I was asking about what happened after that and in between. Wasn't that put before the district court at the – what you characterized as the second hearing that resolved the matter that's now before us? It was, but in fact, there was no evidence at that hearing that the – I guess the underlying issue here is whether or not the facts that were resolved at that hearing by the judge were factual questions or were legal questions. And our position is that the – not that the – whether or not the facts went back and forth, but whether or not the facts going back and forth constituted an offer or whether they constituted an acceptance. Well, what he said was, you know, what you have in the end is whether or not the faxing was inadvertent or intentional. And that is the faxing of a piece of paper with the signature. Correct. We don't contest that. But it seems to me you get caught up in rhetoric. He said it wasn't accidental. It was intentional. Therefore, you have a signed settlement agreement. And it doesn't really matter whether you have offer – in the end, you have a completed document. So I'm having a little trouble because you keep getting caught up in this rubric of, well, no, it wasn't an offer. It was an acceptance. Or it wasn't an acceptance. It was an offer. But you had a signed settlement agreement. That's what the judge said in the end. Right. But the reason that's pivotal is because the signature on the settlement agreement occurred on May 17th by Mr. McGuardy, who is a Nevada safety – Nevada risks attorney. Now, that was at 10.40 a.m. At 11.40 a.m., he called his office from his client's office and told his secretary to revoke that offer. Now, so therefore, it's pivotal whether at that point that revocation that the secretary did in fact effectuate was the revocation of an offer or the revocation of an acceptance. If it was the revocation of an acceptance, American Safety is correct. There can be no revocation of an acceptance under the law of contract. But there can be a revocation of an offer. So if one hour after he made the offer, he revoked the offer before American Safety accepted that offer and signed the settlement agreement, which American Safety claims it did on that very same day at 8.40 a.m., but in fact, if you look at the documents supporting that, it may have signed it, but there's no indication that it actually sent the – American Safety sent the signed settlement agreement to Mr. McGuardy, Nevada safety's attorney, until June 11th of that year. So in other words, the signature occurred after the revocation occurred. Counsel, but the settlement document had a specific provision that says, the settlement agreement and mutual release shall not become effective unless and until each of the parties has executed at least one counterpart. He did not speak in terms of when that executed counterpart was transmitted to your client. It was the fact that at that point in time, before your client revoked, each party had signed a settlement, a counterpart, and that was pursuant to an understanding that was embodied in the original settlement agreement. That's true, Your Honor, except that under the law of contracts, an acceptance is not effectuated until it's placed in the mailbox, under the mailbox rule. That's a default rule, Counsel. If people enter into a contract that tells how they're going to be bound by the contract, that overtakes the rule of law that is a default rule in terms of offer and acceptance, doesn't it? That's fundamental contract law. People can set their own ground rules. Well, I don't believe that it does, because there's no way for – Nevada Risk, too, have known at that point in time when the signature occurred that the signature, in fact, did occur. And that's point number one. And point number two is, according to the timeline, which we don't dispute here, the signature by American Safety occurred at 8.40 a.m. on May 17th, which was before the signature by Nevada Risk's attorney occurred, which was at 10.40 a.m. So here we have a situation where one party is claiming that they signed and accepted an offer that was made before the offer was, in fact, made, which doesn't make any sense. You can't accept an offer until one is actually extended. Do you care to retain time and respond to the other? Well, if I could just make – I would like to reserve two minutes, but I would like to make one other point with respect to the second issue, which was the indefiniteness of a material term in the provision in the contract, which in and of itself, regardless of whether there was an offer or an acceptance, destroys any possibility of there having been a settlement agreement in the case. Elaborate. Well, if you read the settlement agreement, Provision 4, it states, Nevada Risk will continue to perform all duties that it is obligated to perform under the terms of the above-referenced agreement, which survive termination of the agreement. American Safety will provide to Nevada Risk, in writing, its expectations and understanding of those administrative duties which survive termination of the agreement. Now, this provision – well, if I can back up a step. In March of 2002, during the settlement conference, the parties agreed, and there's a great deal of testimony regarding this, that the ultimate agreement, the memorialized agreement, would contain a term which permitted a dialogue between the two parties regarding what obligations and duties ultimately survive the termination of the underlying contract. That is not contained in this provision in Provision 4. Instead, there is a unilateral one-sided term, which indicates that one side, American Safety, is permitted to impose upon the other side whatever terms, whatever obligations and duties it decides it wants to impose upon them. Didn't the parties agree that American Safety will provide? So it seems that the parties agreed to allow the document to come into existence post-execution. Well, which brings us back to the offer and acceptance issue. You can agree to something like that. That's true. But even if we assume that there was agreement with respect to this term, the term itself is inconsistent with what the parties agreed themselves three months previously at the settlement conference. And there's no dispute over their agreement that both parties would be able to have a dialogue with respect to what duties and obligations survive the underlying contract. So it's the imposition of duties and obligations that's inconsistent with a previous agreement between the parties. Well, is it not true that on May 1st, American Safety had sent on to Nevada Risk a statement saying, here's the deal, here's what these obligations are. And at that point, two weeks later, your party signs on to the thing by what you've characterized as an offer, which is the other issue, but certainly did not say, wait a minute, that's not our understanding. That's not the deal. It simply signed on and sent it back, right? That is true, except that under the law of contracts, an agreement cannot be enforceable at all if there's a material term that is indefinite. So our argument is that even though they agreed to this, they agreed to a term that they weren't permitted to agree to under the law of contracts because it forbids the agreement to terms which need to be decided later on by the parties. It's too open-ended. And my last point, Your Honor, is with respect to the agreement not containing any reference to the underlying contract at all. And therefore, being unenforceable. The underlying contract, which was the focus of this, the crux of this litigation, was over the litigation resulted from this contract, and it related to fees that one party was supposed to collect from the other party. Now, there's no indication in this agreement at all as to whether that contract has been terminated. So the question of whether the duties and obligations remained or survived and what they were could never truly be reached because we're not really sure, based upon this agreement, whether that contract had been terminated. So for that reason as well ---- On March 15th, counsel ---- Sorry? On March 15th at that initial proceeding, the settlement, American safety represented and, as I understand it, Nevada Risk did not challenge a statement that the contract has been terminated, the parties agreed that the contract has been terminated, and how are you now in a position to say otherwise? They did say that on March 15th. But then when they ---- They did say that. They did say that. But when they created this draft settlement agreement, they did not memorialize that agreement. But is it true or is it not true? It's true. It's true. Surprise. Except that under the law of oral contracts, an oral contract cannot form unless all the terms are agreed to. So what you're saying, Your Honor, is that there was an agreement to an oral term, which back in March of that year, and that term being that the contract, the underlying contract had terminated, and later on they did not memorialize it in the agreement, yet there's still ---- yet it still represents an agreement. It could not if it was just oral and it was not in writing. It's a terminated agreement, but it still represents an agreement. Could you rephrase it? I'm sorry. No, go ahead. The College of Law at the University of Idaho has rules that would be very useful in resolving this case, but I won't tell you what they are. Go ahead. I'll reserve the balance of my time. All right. That's for my law clerks who are listening in. Rule one and rule two. Go ahead, counsel. Good morning, Your Honors. May it please the Court, Edmund Farrell, appearing on behalf of Appley American Safety Casualty Insurance Company. Your Honors, I don't mean to belittle the arguments of counsel, but I think ---- Go ahead and belittle them. Well, I'm not going to belittle them, Your Honor. What I'm going to tell you is that the issues in this case are very cut and dry and very simple. Number one, let's focus on the standard of review here. It's an abuse of discretion, clearly erroneous findings of fact or clear error of law. That did not happen at the hearing on the motion to enforce the settlement. We can hear all we want about the problems with the settlement agreement, that it doesn't contain all the terms that the parties thought it should have, that there's things that are to be done in the future that are uncertain. The fact remains that the Court heard all of that argument. The Court looked at the settlement agreement that was signed by the parties and determined that there was an enforceable settlement agreement between Nevada Risk and American Safety. This Court's inquiry is very limited. Was that finding an abuse of discretion? On this record, Your Honor, I don't see how this Court could find that that finding was an abuse of discretion. Thank you, counsel. You're welcome, Your Honor. Would you care to respond to that? It won't surprise you to learn that I disagree. It is true that the standard of review here is abuse of discretion and that this Court must review for clear error. And I submit that there was, in fact, clear error on the district court's part, that based upon all the testimony that it heard and upon the previous hearing that occurred on March 15th before Judge Johnson, there was no contradictory testimony with respect to whether the term provision 4 was material. There was no contradictory testimony with respect to whether the parties previously had agreed that there would be a dialogue between the two with respect to the surviving obligations. There was no contradictory testimony with respect to whether Nevada Risk would have the opportunity to review the claim files, the Nevada claim files. So to find that an offer had occurred on May 17th and that the material term of the surviving obligations responsibility was irrelevant was clearly erroneous. Thank you, counsel. The case just argued is ordered and submitted. And we'll go on to the last case of the day, Nitjen v. Secugen. Better known as the case of many motions.
judges: Trott, McKeown, Shadur